IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROCK BUMBARGER<br>1018 MIFFLIN STREET<br>HUNTINGDON, PA 16652<br>    *Claimant*,<br><br>NORFOLK SOUTHERN RAILWAY COMPANY<br>Three Commercial Place<br>Norfolk, VA 23510<br>    *Carrier* | Civil Action No.: 3:23-cv-63<br>B110<br>Category #8<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**
**Federal Rail Safety Act 49 U.S.C. 20109**

1. The claimant, Brock Bumbarger, is a citizen of the Commonwealth of Pennsylvania, whose address is 1018 Mifflin Street, Huntingdon, PA 16652.

2. Claimant, Norfolk Southern (hereinafter referred to as "Norfolk"), is a railroad incorporated in the State of Virginia, doing business in the Western District of Pennsylvania.

3. The action arises under 49 U.S.C. 20109.

4. All the acts alleged to have been done or not to have been done by the carrier were done or not done by the carrier, its agents, servants, workmen and/or employees acting in the course and scope of its employment for and on behalf of the carrier.

5. At all time material hereto, Claimant was employed by Carrier.

6. All of the property, equipment and operations involved in the accident herein referred to were owned by and under the control of the carrier, its agents, servants and/or employees.

7. On or about February 27, 2019, and for some time prior thereto, claimant was employed by the carrier, Norfolk Southern as a Track Patrol Foreman.

8. On that date, claimant was removed from service by the carrier pending

termination.

9. The removal from service was improper under the carrier's work rules.

10. The February 2019 removal from service was allegedly for a violation of roadway worker protection rules but was pretext for claimant's report of safety concerns as well to unfairly punish claimant for personal grudges held by Supervisor Paul Barrick.

11. In the weeks leading up to February 27, 2019, claimant came to believe that the carrier's supervisors were not properly maintaining a safe work environment for the workers.

12. Claimant's safety concerns reached a point where claimant believed it necessary to alert the supervisor of the Huntingdon Division, Paul Barrick despite there being some history of personal animus toward claimant from supervisor Barrick.

13. Despite claimant's efforts to address these safety issues; things seemed to get worse.

14. An assistant supervisor, Jacob Williard, raised some of claimant's concerns to Adam Baginski (Assistant Division Engineer) and Paul Barrick, seemingly to no avail.

15. Morale and safety continued to decline and during a morning meeting there was an argument regarding the use of workers to clean snow off switches during low visibility conditions (heavy snow at night).

16. When the claimant and his co-workers challenged the carrier on the unsafe working conditions, a supervisor yelled "If I tell you to water the fucking plants all day, you water the plants all day."

17. Over the relevant periods, supervisor Barrick failed to address claimant's safety concerns as well as ignored claimant's reports of hazards on the tracks.

18. The supervisor failed to take meaningful steps to address the safety concerns that were challenged and went so far as to blame the hazards on claimant while suggesting wrong and unsafe means to deal with the identified issues.

19. At a morning meeting, supervisor Barrick came to the morning meeting where workers (including claimant) explained their safety concerns.

20. During this meeting, supervisor Barrick became visibly agitated.

21. Supervisor Barrick suddenly slammed his fists down on a table and yelled "I am done talking about this! Now get out of this fucking office and go the fuck to work!"

22. It was approximately 1-2 weeks later that claimant removed from service (February 27, 2019).

23. On February 27, 2019, claimant was told that there was a problem with one of the tracks that needed to be urgently addressed.

24. The supervisor nor the assistant supervisor provided an adequate job briefing; neither supervisor knew or provided the specifics of the track problem or the job location to be addressed other than it being at CP Tunnel on main two track.

25. Claimant was instructed to go look for the defect with Daniel J. Moyer despite claimant being a track patrol foreman and having duties to escort an inspector from the FRA.

26. When claimant arrived at CP Tunnel, he saw that that the roadway was not plowed or salted.

27. Claimant and Mr. Moyer conducted a job briefing at their work truck. While walking up to the track area, the workers noticed a white truck parked approximately 400 feet away.

28. The workers provided on track protection for one another as they alternated looking for the track defect. During this time, dispatch had radioed the workers as trains were being delayed due to the alleged track defect.

29. Claimant was soon thereafter approached by the person in the white truck, Ed Pazdan, who complained that the workers did not have on their personal protective equipment (hard hats) when they got out the truck to do the inspection.

30. Claimant and Mr. Moyer apologized for not having his hard hat on and stated that it would not happen again or words to that effect.

31. Approximately 10 minutes thereafter, claimant was called on his cell phone by Mr. Barrick, asked if he was still at CP Tunnel and when he said yes, was told to wait for his arrival and that he would be there in 15 minutes with Adam Baginski and Jacob Williard.

32. It then appeared to the men that something was amiss as Mr. Williard was supposed to be 45 minutes away.

33. When the supervisors arrived, they began to accuse the men of safety violations, threatening to charge them with violations, despite the supervisors all not following safety rules regarding PPE (standing on a sheet of ice in the field without snow spikes).

34. When the supervisors began to demand statements, claimant asked for union representation which was denied.

35. The supervisors continued to demand a statement and after one was given without a union representative, the workers were taken for a drug screening.

36. Claimant and Mr. Moyer were then placed out of service pending investigation and hearing.

37. Claimant was subsequently escorted off the property and approximately 30 days letter formally charged with safety violations.

38. Claimant's health insurance was cancelled, and his job was placed up for bid.

39. A disciplinary hearing was held on March 27, 2019. In a letter dated April 8, 2019, claimant was notified that he was terminated for the "improper performance of duty on February 27, 2019, at CP Tunnel (PT 212.9)." This was an unusually harsh result under these facts and is not believed to be in accord with policy or past practice.

40. After an appeal by claimant's union, Plaintiff was reinstated to duty nearly four months after being removed from service.

41. In a June 13, 2019, letter between the carrier and the union, it was agreed that the appeal results (allowing claimant and Mr. Moyer to return to service) were "without prejudice to the position of either party in this case…"

42. As a result of being out of service, claimant has lost pay and other benefits of employment for which he desires recompense. Additionally, claimant's disciplinary file now contains derogatory information that should be removed.

43. When claimant was returned to service and voiced his intention to bump into a section foreman position as he is entitled under the collective bargaining agreement, he learned that certain supervisors were "out to get him", "that a target was on his back" and "it was not in his best interest to bid a foreman job at that time".

44. Plaintiff subsequently went out of service due to the stress and anxiety caused by Defendant's retaliation.

44. Claimant now seeks all damages under FRSA Section 20109 including, but not limited to, punitive damages to deter Norfolk Southern from retaliating against other employees for reporting unsafe work conditions.

45. Plaintiff filed a whistleblower complaint with OSHA within the 180 days of unlawful action.

46.     Two hundred and ten (210) days have passed since the filing of the complaint with OSHA and there has been no formal determination by the Secretary of Labor.

WHEREFORE, claimant, Brock Bumbarger claims judgment against Norfolk Southern Railway Company and all general and specials damages available under the FRSA.

                                        **KELLER & GOGGIN, P.C.**

BY: */s/ James M. Duckworth*
James M. Duckworth
PA #83017
1420 Walnut Street, Suite 1108
Philadelphia, PA 19102
(215) 735-8780
(215)735-5126
jduckworth@keller-goggin.com
Counsel for Plaintiff

Dated: April 5, 2023